OPINION
Defendant-appellant, Chris Frye, appeals from an order of the Franklin County Court of Common Pleas adjudicating him to be a sexual predator. For the reasons that follow, we reverse.
In 1988, appellant was indicted on two counts of aggravated burglary (Counts 1 and 2) and one count of attempted rape (Count 3). Count 1 of the indictment was related to a March 25, 1988 incident involving Elizabeth M. Good. Counts 2 and 3 of the indictment was related to a March 27, 1988 incident involving Shannon L. Coburn. On November 7, 1988, appellant pleaded guilty to Count 1 of the indictment (aggravated burglary of Ms. Good) and Count 3 of the indictment (attempted rape of Ms. Coburn) in exchange for a nolle prosequi on Count 2 of the indictment (aggravated burglary of Ms. Coburn). Appellant was sentenced to two concurrent six to twenty-five year terms of imprisonment.
On October 27, 1998, the trial court conducted a sexual predator determination hearing pursuant to R.C. Chapter 2950. At the hearing, the state introduced copies of the indictment, the entry of guilty plea form, the sentencing entry, and presentence investigation report ("PSI report") used by the court to sentence appellant in 1988.
The PSI report describes the incident involving Ms Good as follows: At approximately 12:30 a.m. on the night of March 25, 1988, Ms. Good was awakened by appellant standing over her. Appellant got on top of Ms. Good, touched her hair and buttocks, told her he wanted to make love to her, put his hand over her mouth, and told Ms. Good that he had been in her house before and had watched her and her daughter sleep. Ms. Good struggled with appellant, removed his hand from her mouth, and persuaded appellant to leave by telling him that she had been raped before. Appellant later telephoned Ms. Good, telling her that he had been previously watching her residence and had entered her house on one prior occasion.
The PSI report describes the incident involving Ms. Coburn as follows: At approximately 11:41 p.m. on the night of March 27, 1988, Ms. Coburn was awakened from sleeping when appellant, who was unclothed from the waist down, pulled the bedcovers back and climbed on top of her. Appellant put his hand over Ms. Coburn's mouth and said, "just do what I want you to do and I won't hurt you." Ms. Coburn screamed and struggled with appellant. A light was turned on, and appellant fled.
The PSI report also states that appellant admitted that he had been in the grip of a voyeuristic compulsion to look into windows and watch young women. Finally, the PSI report indicates that appellant stated that his voyeuristic behavior started about three years earlier.
Appellant called Dr. Daniel D. Hrinko, a licensed clinical psychologist. Dr. Hrinko testified that, in September 1998, at the request of the parole board, he conducted an evaluation of appellant for purposes of assessing the risk of appellant reoffending if granted parole and to determine whether appellant needed to participate in sex offender treatment before being released to the community. In so doing, Dr. Hrinko interviewed appellant, reviewed the results of a personality test, and reviewed the information contained in appellant's psychological and master files maintained by the institution, including the 1988 PSI report.
Based upon his assessment, Dr. Hrinko testified that he recommended that appellant need not complete a sex offender program prior to being released on parole but that appellant should participate in out-patient mental health treatment and a community based sex offender program upon release. Dr. Hrinko also concluded that appellant was a low risk for future sex offenses. In reference to the psychological assessments contained in the 1988 PSI report, Dr. Hrinko testified that he had seen a noticeable decrease in depression and that the recent personality testing showed a much higher level of personal and emotional stability. Dr. Hrinko further testified that he did not see evidence of obsessive/compulsive behavior. The trial court admitted a copy of the report drafted by Dr. Hrinko for the parole board.
Finally, the trial court asked Dr. Hrinko whether he could testify to a reasonable degree of psychological certainty that appellant would not reoffend. Dr. Hrinko responded that he could not say that appellant would not reoffend since predicting behavior is very difficult.
At the end of the October 27, 1998 hearing, the trial court ruled that it found appellant to be a sexual predator. In so doing, the trial court specifically ruled as follows:
 THE COURT: I've read through the presentence investigation and the doctor's report. One thing I would note with regard to the doctor's report is that was a referral that was requested by the parole board. I think clearly that Mr. Frye understands that, that if he does warrant [sic] to be released on parole, perhaps to some extent information that he may be giving to the doctor may be influenced by that. Obviously he is not here, and I cannot judge his credibility in this.
 The other factors with regard to the doctor's report is, as he indicated, he was not willing to indicate that Mr. Frye is not going to re-offend.
 I believe that there are multiple victims of this offense. Mr. Frye admitted in the presentence investigation that his voyeuristic activity had gone on for a period of three years, so I don't know how many more woman may have been a target of that activity. I find it also very, very significant that he admits that he was unable to resist or control the compulsion to do it.
 It seems to me that — I know that the statute talks about any cruelty, and I suppose that the statute is looking into it in terms of maybe physical cruelty, but clearly I think there can be other forms of cruelty.
 The fact that these attacks even took place probably seems cruel to the victims of this offense. The fact that Mr. Frye was so bold as to even call one of the victims after he had been in her home, had somewhat bragged about the fact that he had been watching her and her daughter on other occasions I find very significant. With regard to his voyeuristic activity, Dr. Hrinko indicated that voyeurism typically is a way of seeking sexual gratification of an individual that engages in that type of activity.
 I think with all the factors here, Dr. Hrinko may think he's low risk, but I think there is clear and convincing evidence based upon the circumstances of these offenses when he was out on his own — which if he is released on parole at some point in time he will be out on his own, and I think that it is likely that he will engage in sexually-oriented offenses if he is released, quite frankly.
 I think someone that's indicating that they don't know how to control a compulsion, as the doctor indicated, he hasn't really learned much of anything with regard to that other than his self-reading. The Court will find that he is a sexual predator and have the prosecution prepare the appropriate entry. [Tr. 42-44.]
On October 29, 1998, the trial court filed an entry stating that, based upon the reasons stated on the record at the conclusion of the hearing, it determined by clear and convincing evidence that appellant is a sexual predator. It is from this entry that appellant appeals, raising the following three assignments of error:
Assignment of Error One
 (a) WHEN A TRIAL COURT HEARS EVIDENCE FROM AN EXPERT THAT AN INDIVIDUAL IS NOT LIKELY TO REOFFEND, IT COMMITS ERROR IN HOLDING THAT THE INDIVIDUAL IS A SEXUAL PREDATOR WHEN THE EVIDENCE FAILS TO MEET THE CLEAR AND CONVINCING STANDARD UNDER R.C. 2950.09 (B) (3).
 (b) THE TRIAL COURT ERRS IN FINDING THE ACCUSED A SEXUAL PREDATOR WHEN THE RECORD REVEALS THE COURT USED ONLY THREE OF THE TEN FACTORS NOTED IN R.C. 2950.09 (B) (2); AND OF THOSE THREE, THE COURT IMPROPERLY APPLIED THEM.
Assignment of Error Two
 R.C. CHAPTER 2950 COMPELS A BREACH OF APPELLANT'S PLEA AGREEMENT AND THEREBY VIOLATES CONSTITUTIONAL PROHIBITION AGAINST RETROACTIVE LEGISLATION THAT IMPAIRS THE OBLIGATION OF CONTRACTS. IN ADDITION, R.C. CHAPTER 2950 IMBUES APPELLANT'S PRIOR GUILTY PLEA WITH A SUBSTANTIVE AND COLLATERAL CONSEQUENCE: A DIMINUTION IN HIS RIGHT TO PRIVACY.
Assignment of Error Three
 OHIO REVISED CODE CHAPTER 2950, AS APPLIED THOUGH SECTIONS 2950.04 AND 2950.09 TO CONDUCT PRIOR TO THE EFFECTIVE DATE OF THIS STATUTE, VIOLATES THE EX POST FACTO CLAUSE OF THE U.S. CONSTITUTION.
In his first assignment of error, appellant contends that the trial court's determination that he is a sexual predator is against the weight of the evidence. In particular, appellant argues that the evidence does not support the trial court's conclusion that appellant is likely to commit a sexually oriented offense in the future.
R.C. 2950.01(E) defines a "Sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Certain registration and verification of address requirements and public notification provisions apply to a person who is adjudicated to be a sexual predator. See, generally, R.C. 2950.04, 2950.06, 2950.07,2950.10, and 2950.11.
Pursuant to R.C. 2950.09(B) and (C), a trial court holds a hearing to determine whether an incarcerated defendant who had been convicted of a sexually oriented offense is a sexual predator by clear and convincing evidence. In so doing, the trial court considers all "relevant factors," including, but not limited to, the following specific factors:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which the sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct. [R.C. 2950.09(B)(2).]
As this court has stated, an appellate court in reviewing a finding that the appellant is a sexual predator "must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the clear and convincing standard." State v. Johnson (Sept. 24, 1998), Franklin App. No 97APA12-1585, unreported (1998 Opinions 4551, 4558); see, generally, State v. Harden (Oct. 29, 1998), Franklin App. No. 98AP-223, unreported (1998 Opinions 4961). Clear and convincing evidence is "`that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122 (quoting Cross v. Ledford
[1954], 161 Ohio St. 469, paragraph three of the syllabus).
Here, appellant argues that the trial court's decision cannot be maintained given that the trial court found that only three of the ten factors enumerated in R.C. 2950.09(B)(2) applied to appellant. Appellant points out that the trial court based its decision, either explicitly or implicitly, on the following three grounds: (1) that there were multiple victims; (2) that there was cruelty involved; and (3) that appellant suffered from a mental illness or mental disability—i.e., appellant's admission in the PSI report that he had a compulsion to engage in voyeuristic behavior that he could not control. According to appellant, the trial court implicitly found that seven of the factors did not apply and, as such, "a preponderance of the determinative factors were proven in favor of the defense and in opposition to predator classification." (Appellant's brief at 12.)
We reject appellant's suggestion that a sexual predator determination can only be sustained upon a finding that a majority of the enumerated factors apply. Such an approach is contradicted by the language of, and purpose of, R.C. Chapter 2950. As this court has repeatedly reaffirmed, the trial court must consider all relevant factors including, but not limited to, the specifically enumerated factors. Thus, "the trial court may place as much or as little weight on any of the factors as it chooses; * * *. Nor does the trial court have to find the majority of the factors to be applicable." State v. Maser (Apr. 20, 1999), Franklin App. No. 98AP-689, unreported (1999 Opinions 831, 835-836).
Appellant also argues that the trial court erred in basing its decision on the grounds that the sexually oriented offense at issue in this case involved multiple victims. As noted by appellant, the language of R.C. 2950.09(B)(2)(d) indicates that this factor applies only if "the sexually oriented offense for which sentence [was] imposed involved multiple victims." Appellant argues that the trial court did not find (and could not find) that appellant's attempted rape conviction (the only sexually oriented offense for which sentence was imposed here) involved multiple victims. Rather, the trial court found multiple victims because "[appellant] admitted in the presentence investigation that his voyeuristic activity had gone on for a period of three years, so I don't know how many more women may have been a target of that activity."
While we agree that the factual basis for the trial court's finding may not comport with the specific language of R.C.2950.09(B)(2)(d), we do not find that the trial court committed reversible error solely in basing its sexual predator determination, in part, on grounds that appellant's prior conduct might have involved numerous victims. Again, the trial court must consider all relevant factors, and not only those specifically enumerated in R.C. 2950.09(B)(2). The fact that appellant engaged in voyeuristic activity for three years prior to the offense clearly falls under the category of "any additional behavioral characteristic that contributed to the offender's conduct." R.C.2950.09(B)(2)(j).
Similarly, we reject appellant's argument that the trial court erred in basing its decision on the ground that appellant's conduct at issue in this case involved cruelty. As noted by appellant, R.C. 2950.09(B)(2)(i) requires the trial court to consider whether that offender, during the commission of the sexually oriented offense for which sentence was imposed (in this case the attempted rape of Coburn), displayed cruelty or made one or more threats of cruelty. As noted above, the trial court's finding of cruelty was not based upon any specific conduct by appellant during the commission of the attempted rape. Rather, the trial court found cruelty based on the fact that the "attacks even took place" and that the PSI report indicates that appellant telephoned Ms. Good bragging that he had been watching her and her daughter on other occasions.
Again, the factual basis of the trial court's finding of cruelty does not appear to comport with the specific language of R.C. 2950.09(B)(2)(i). However, given the trial court's obligation to consider all relevant factors, we do not find that the trial court committed reversible error solely because it based its decision, in part, on the conduct outlined in the PSI report demonstrating a certain level of cruelty in his conduct with Ms. Good.
Finally, appellant contends that the trial court's determination was not supported by clear and convincing evidence given Dr. Hrinko's uncontroverted testimony that appellant was a low risk to reoffend. In particular, appellant argues that by relying on the ten-year-old PSI report to support its finding that appellant suffered from an uncontrollable compulsion to engage in voyeuristic behavior, the trial court improperly disregarded the testimony of Dr. Hrinko and the impact of ten intervening years of incarceration. We agree.
As indicated from the trial court's statement on the record, it reasoned that Dr. Hrinko's opinion was not credible because it was generated at the request of the parole board and, thus, likely influenced by appellant's desire to be released on parole. The trial court also discounted Dr. Hrinko's testimony because he could not assure the court that appellant would not reoffend. We find, however, that neither of these grounds is a legitimate basis to discount Dr. Hrinko's testimony.
Under the trial court's reasoning, almost any psychological assessment in which the subject has some interest would be discounted. There is nothing in the record supporting the trial court's speculation that appellant was untruthful in his interview with Dr. Hrinko; nor is there anything in the record suggesting that, in his analysis of appellant, Dr. Hrinko failed to recognize and consider the effect of appellant's personal stake in Dr. Hrinko's final opinion and recommendation. Moreover, the fact that Dr. Hrinko's opinion was generated at the request of and for the parole board (the entity that decides whether appellant should even be released, and under what conditions, from prison) should make Dr. Hrinko's opinion more, rather than less, reliable.
Similarly, we find that Dr. Hrinko's refusal to assure the court that appellant would not reoffend was a candid recognition of the difficulty, if not impossibility, of predicting human behavior and was consistent with his opinion that appellant was a low, but not zero, risk to reoffend. Finally, by discounting Dr. Hrinko's testimony in this regard, the trial court appears to have shifted the burden on appellant to prove that he would not reoffend. In sum, we find that the trial court erred in discounting the testimony of Dr. Hrinko and by relying on the ten-year-old PSI report to conclude that appellant presently suffers from a compulsion to engage in voyeuristic activity.
Given Dr. Hrinko's testimony, we find that the trial court's determination that appellant is likely to reoffend is not supported by clear and convincing evidence. For the foregoing reasons, appellant's first assignment of error is well-taken and sustained.
In his second and third assignments of error, appellant raises constitutional challenges to Ohio's sexual predator law as applied to him. Given our disposition of appellant's first assignment of error, appellant's second and third assignments of error are rendered moot.
For the foregoing reasons, appellant's first assignment of error is sustained, and appellant's second and third assignments of error are overruled as moot. We reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to the trial court for preparation of an entry consistent with this opinion.
Judgment reversed and cause remanded with instructions.
DESHLER, J., concurs.
PETREE, J., concurs separately.